UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 7:17-CV-00009 |
| | § | |
| IDALIA PADRON, *et al*, | § | |
| | § | |
| Defendants. | § | |

## **OPINION & ORDER**

The Court now considers the United States of America's ("Plaintiff") motion for default judgment against Nino's Home Health Care, Inc. ("Nino's"),[1] as well as the "joint motion for entry of judgment."[2] After duly considering the record and authorities, the Court **GRANTS** both motions.

### I. BACKGROUND

This is a tax case arising out of the alleged failure of Defendants to pay the Internal Revenue Service ("IRS") what it was owed over a nine-year period. Idalia Padron ("Padron") (collectively with Nino's "Defendants") is the president, sole operator, and sole shareholder of Nino's, a Texas corporation.[3] Plaintiff alleges that Padron and Nino's failed to pay the IRS $2,733,059.61 in Federal Insurance Contributions Act (FICA) taxes, after accounting for payments, credits, and accruals.[4] The IRS attempted to use various vehicles for collection before resorting to litigation, including: "filing notices of federal tax liens, serving notices of intent to levy on Nino's property, and assessing trust fund recovery penalties (TFRPs) against Padron

---

[1] Dkt. No. 12.
[2] Dkt. No. 11. This joint motion is filed by Plaintiff and Defendants Nino's Home Care, Inc., and Idalia Padron. However, Nino's, as a corporation, cannot appear pro se and no attorney has entered an appearance on Nino's behalf. The Court construes the motion as filed only by Plaintiff and Padron.
[3] Dkt. No. 1 p. 2.
[4] Dkt. No. 1 ¶ 11; ¶ 30.

under 26 U.S.C. § 6672."[5] Despite these collection efforts, Plaintiff claims that "the unpaid employment tax liabilities remain largely unpaid."[6]

Plaintiff filed suit in federal court on January 1, 2017,[7] requesting that Nino's tax deficiency be reduced to judgment,[8] and that injunctions be imposed upon Nino's and Padron to ensure compliance with internal revenue law.[9] Plaintiff does not seek a money judgment against Padron. Nino's, who remains unrepresented, never answered, and only Padron has made an appearance in this case.

Plaintiff employs two separate vehicles for relief against Nino's and Padron. With regard to Nino's, Plaintiff moved for entry of default,[10] which was later granted[11] and entered.[12] Plaintiff subsequently moved for entry of default judgment against Nino's.[13] With regard to Padron, Plaintiff has not moved for default entry, and none has been entered. Instead, Plaintiff simply requests a statutory-based permanent injunction pursuant to 26 U.S.C. §7402(a).[14] Confusingly, Plaintiff and Defendants have filed a single, stipulated judgment and injunction, memorializing the specifics of the relief sought against *both* Defendants.[15] This stipulated judgment is meant to resolve the entire case,[16] and has been signed by Plaintiff, Padron, Individually and by Padron as Officer of Nino's.[17]

---

[5] *Id*. ¶ 17.
[6] *Id*.
[7] Dkt. No. 1.
[8] *Id*. p. 9. ¶ 31(B).
[9] *Id*. ¶ 31(A).
[10] Dkt. No. 9. The Court observes that this entry of default was later amended to make clear that entry was only made against Nino's, not Padron.
[11] *Id*.
[12] Dkt. No. 10.
[13] Dkt. No. 12.
[14] *See generally* Dkt. No. 11.
[15] *See* Dkt No. 11-1; Dkt No. 12-2 (the stipulated proposed order is identical with regards to the motions against both Nino's and Padron).
[16] *Id*. ¶ 11.
[17] Here, the Court construes the proposed judgment as a settlement agreement properly executed by Nino's through its duly authorized officer, Padron.

Given this background, the Court first addresses the motion for default judgment against Nino's, specifically addressing the nature of a §7402(a)-based permanent injunction. Finding default judgment against Nino's proper, and spring-boarding from its §7402(a) injunction analysis, the Court then turns to the stipulated §7402(a) injunction against Padron. Also finding this relief appropriate, the Court incorporates (with slight modification) the stipulated judgment and injunction against Nino's and Padron. The Court now turns to the legal standard governing the motion for default judgment against Nino's.

## II. LEGAL STANDARD

Obtaining an entry of default judgment is a three-step process: (1) default by the defendant; (2) entry of default by the Clerk's office; and (3) entry of a default judgment.[18] Here, as noted, Nino's has defaulted by failing to answer or make any appearance in this case.[19] Moreover, entry of default against Nino's has been made by the Clerk of Court.[20] Thus, the only remaining question is whether the third step—entry of default judgment—is appropriate.

Federal Rule of Civil Procedure ("Rule") 55(b) authorizes entry of default judgment with court approval. It is a drastic remedy, resorted to only in extreme situations.[21] Nevertheless, default judgment determinations are left to the discretion of the district court.[22] Determining the propriety of default judgment is itself a three-step process. *First*, the Court must determine if default judgment is procedurally proper, countenancing six factors:

> (1) whether material issues of fact are at issue; (2) whether there has been substantial prejudice; (3) whether grounds for default are clearly established; (4) whether default was caused by good faith mistake or excusable neglect; (5) the

---

[18] *Bieler v. HP Debt Exch., LLC*, 3:13-CV-01609, 2013 WL 3283722, at *2 (N.D. Tex. June 28, 2013) (citing *New York Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir.1996)).
[19] *Brown*, 84 F.3d at 141.
[20] Dkt. No. 10.
[21] *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989).
[22] *Mason v. Lister*, 562 F.2d 343, 345 (5th Cir. 1977).

harshness of the default judgment; and (6) whether the court would feel obligated to set aside a default on the defendant's motion.[23]

*Second*, if default judgment is procedurally proper, the Court must determine whether Plaintiff's claims are meritorious.[24] After all, a defendant's failure to answer and appear does not automatically mean a plaintiff's claims against him are valid.[25] When analyzing the merits of a claim, courts assume the truth of all well-pleaded allegations in the plaintiff's complaint.[26] *Third*, if the plaintiff's claims are meritorious, the Court must determine whether the requested relief is appropriate.[27] In particular, Rule 54(c) dictates that a default judgment "must not differ in kind from, or exceed in amount, what is demanded in the pleadings."

If the Court determines that default judgment is appropriate, it must determine how to calculate damages. The general rule is that "unliquidated damages normally are not awarded without an evidentiary hearing."[28] However, there is an exception when the amount claimed is "one capable of mathematical calculation."[29] When this exception applies, there is no need for an evidentiary hearing, and the court can enter default judgment on the briefing.

### III. ANALYSIS

#### A. *Default judgment against Nino's*

##### i. *Step one: procedural propriety of default judgment against Nino's*

Default judgment is procedurally proper here. *First*, there are no material facts disputed; Nino's has admitted Plaintiff's allegations by failing to answer or appear. *Second*, Nino's failure to respond or appear threatens to cause substantial prejudice because, as one court has stated, it

---

[23] *Bieler*, 2013 WL 3283722, at *2 (citing *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir.1998)).
[24] *Nishimatsu Const. Co., Ltd. v. Houston Nat. Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).
[25] *See id.*
[26] *Id.*
[27] *United States v. 1998 Freightliner Vin #: 1FUYCZYB3WP886986*, 548 F. Supp. 2d 381, 384 (W.D. Tex. 2008).
[28] *Leedo Cabinetry v. James Sales & Distribution, Inc.*, 157 F.3d 410, 414 (5th Cir. 1998).
[29] *Id.* (citing *James v. Frame*, 6 F.3d 307, 309–10 (5th Cir. 1993)).

"threatens to bring the adversarial process to a halt, effectively prejudicing Plaintiff's interests."[30] *Third*, the grounds for default judgment are clearly established because Nino's has failed to answer or defend.

*Fourth*, there is no indication that default was caused by a good faith mistake or excusable neglect. Padron has simply elected not to provide Nino's with counsel, thus rendering inevitable Nino's failure to answer and appear.[31] *Fifth*, default judgement would not be harsh in this situation because the judgment would be for nothing more than Nino's owes under the law, and the injunction would primarily ensure Nino's continued compliance with the law. *Sixth*, given the circumstances, this Court has no reason to set aside any default judgment it may enter. In sum, default judgment is procedurally proper.

### ii. Step two: merits of Plaintiff's claims against Nino's

Plaintiff's motion requests that the Court (1) reduce Nino's FICA tax liability to judgment, and (2) impose a permanent injunction on Nino's pursuant to 26 U.S.C § 7402(a) to ensure compliance with internal revenue law. The Court addresses these requests sequentially.

#### a) Reducing FICA tax liability to judgment

Plaintiff's claim against Nino's is meritorious. Title 26 of the United States Code imposes a duty upon employers to pay their FICA taxes. These taxes come from two sources. *First*, FICA taxes are collected from employee wages.[32] Employers have a duty to deduct the employee's FICA taxes from his wages,[33] and to periodically deposit those funds into a federal depository

---

[30] *Ins. Co. of the W. v. H & G Contractors, Inc.*, CIV.A. C-10-390, 2011 WL 4738197, at *3 (S.D. Tex. Oct. 5, 2011) (citing *Lindsey*, 161 F.3d at 893; *Sun Bank*, 874 F.2d at 276.).
[31] Dkt. No. 11.
[32] 26 U.S.C.A. § 3101(a) (West) (concerning the proper method of calculating how much of an employee's wages must go towards FICA taxes).
[33] 26 U.S.C.A. § 3102(a) (West) (discussing the procedure involved in deducting FICA taxes from an employee's wages).

bank.[34] Furthermore, "[e]very employer required so to deduct the tax shall be liable for the payment of such tax."[35] *Second*, FICA taxes are collected from the employer itself, as a portion of the wages paid by the employer.[36] The employer has the duty to pay this excise tax: "there is hereby imposed on every employer an excise tax . . . *paid by the employer* with respect to employment."[37]

Here, Plaintiff has specifically alleged, and Nino's has thus admitted by default, that Nino's failed to pay FICA taxes for twenty quarters, beginning in 2005 and continuing through 2016.[38] Moreover, Plaintiff alleges that to no avail, it has attempted to collect the delinquent taxes in numerous ways.[39] Furthermore, Plaintiff alleges that a delegate of the Secretary of the Treasury has assessed Nino's total FICA liability (along with accruals and statutory penalties) to be $2,733,059.61 as of December 19, 2016.[40] Thus, under Title 26, Nino's is liable to pay Plaintiff $2,733,059.61. Plaintiff's pleadings adequately supports its request that the Court reduce Nino's FICA tax liability to judgment.

### b) Permanent injunction

Plaintiff also request a permanent injunction against Nino's pursuant to 26 U.S.C. § 7402(a), which states:

> The district courts of the United States . . . shall have such jurisdiction to make and issue . . . orders of injunction, and . . . to render such judgments and decrees as may be necessary or appropriate for the enforcement of the internal revenue laws. The remedies hereby provided are in addition to and not exclusive of any and all other remedies of the United States . . . .

---

[34] *See* 26 C.F.R. §§ 31.6302-1; 31.6302(c)-2 and (c)-3.
[35] 26 U.S.C.A. § 3102(b) (West).
[36] 26 U.S.C.A. § 3111(a) (West).
[37] *Id*. ("emphasis added).
[38] Dkt. No. 1 ¶ 11.
[39] *Id*. ¶¶ 17–20.
[40] *Id*. ¶¶ 28–30.

Plaintiff, with reference to the underlying merits of his FICA claims, contends that a permanent injunction is permitted because it is appropriate for the enforcement of internal revenue laws in this instance (i.e., would ensure Nino's compliance with internal revenue laws going forward).[41]

The question before the Court is this: is there a sufficient basis in Plaintiff's pleadings to warrant a permanent injunction against Nino's under 26 U.S.C. § 7402(a)? This leads to a more fundamental question: what *constitutes* a sufficient basis for a permanent injunction under § 7402(a)? The Fifth Circuit has not resolved this question,[42] and one district court has recently stated: "[a]uthority is split as to the standard governing issuance of an injunction under that provision."[43] Indeed, some courts have held that "the decision to issue an injunction under § 7402(a) is governed by the traditional factors shaping the district court's use of the equitable remedy."[44] However, the majority of courts appear to hold the opposite: "the government need only show that an injunction is appropriate for the enforcement of the internal revenue laws, *without reference to the traditional equitable factors*."[45]

In word or deed, the majority of district courts in Texas appear to follow the majority approach,[46] ostensibly because the federal legislature already countenanced the equitable factors

---

[41] Dkt. No. 12 pp. 5–7.
[42] As of May 5, 2017, a Westlaw Next search of "7402(a)" only produces fourteen results with regard to Fifth Circuit case law. A careful review of each case indicates that the Fifth Circuit has scarcely grappled with this provision substantively, and insofar as they have, only established two principles: (1) that a district court can employ Section 7402(a) to compel compliance with a summons, and (2) that Section 7402(a) cannot bestow upon a party equitable tolling to enforce tax law. *See United States v. Redhead*, 194 Fed. Appx. 234, 237 (5th Cir. 2006) (concerning compliance with summonses); *see also Doe v. KPMG, LLP*, 398 F.3d 686, 689 (5th Cir. 2005) (concerning equitable tolling).
[43] *United States v. R & K Tile, Inc.*, CIV. CCB-14-3025, 2015 WL 1736802, at *2 (D. Md. Apr. 14, 2015).
[44] *Id*. (citing *United States v. Ernst & Whinney*, 735 F.2d 1296, 1301 (11th Cir. 1984).
[45] *Id*. (citing *United States v. Thompson*, 395 F.Supp.2d 941, 945 (E.D. Cal. 2005) (emphasis added)); *see also United States v. ITS Fin., LLC*, 592 F. App'x 387, 400 (6th Cir. 2014).
[46] *See United States v. Harris*, CIV.A. H-06-2115, 2007 WL 614207, at *3 (S.D. Tex. Feb. 26, 2007) (issuing permanent injunction under § 7402(a) without discussion of traditional equitable injunction factors, merely noting that absent the injunction, the defendant was likely to continue illegal activity); *United States v. Thompson*, CIV. 13-2247, 2013 WL 6997410, at *1 (S.D. Tex. Sept. 3, 2013) (issuing § 7402(a)-based permanent injunction in a bare-naked fashion, without any reference to equitable requirements); *United States v. Zweifel*, 4:13-CV-02121, 2013 WL 8540911, at *1 (S.D. Tex. July 25, 2013) (same); *United States v. Hand-Bostick*, 3:09-CV-1075-L, 2014 WL 5023633, at *7 (N.D. Tex. Oct. 8, 2014) (characterizing § 7402(a) as a "catch-all" provision broadly empowering

when codifying the § 7402(a) injunction power.[47] This Court joins the majority of district courts in Texas and elsewhere, and determines that the traditional requirements associated with injunctions need not necessarily be met in order to obtain a § 7402(a)-based injunction.

This said, there is a sufficient basis in the pleadings to support a § 7402(a)-based permanent injunction against Defendant. The only ostensible requirement for a § 7402(a) permanent injunction is that it be "necessary or appropriate for the enforcement of the internal revenue laws."[48] Plaintiff's allegations establish Nino's consistent and blatant disobedience of this country's internal revenue laws for nine years, and to the tune of almost three million dollars. It would seem Nino's illegal conduct would have continued indefinitely had it not been sued. Now that it has been sued, careful monitoring of Nino's conduct is necessary to prevent future misconduct.

### iii. Propriety of requested relief against Nino's

Plaintiff's requested relief against Nino's in the motion for default judgment is slightly larger than that requested in Plaintiff's complaint. The complaint only requests a money judgement of $2,733,059.61.[49] However, the motion for default judgment requests a judgment for this sum "*plus statutory additions and interest according to law from December 19, 2016.*"[50] Because this additional request is both unspecified (i.e., the Court has no idea how much this is) and falls outside the scope of relief requested in the complaint, it will not be granted. However,

---

district courts to do what they need to effectuate compliance with tax law); *United States v. Grider*, 3:10-CV-0582-D, 2010 WL 4514623, at *2 (N.D. Tex. Nov. 2, 2010) (noting that § 7402(a) injunction analysis need not, but can, consider traditional equitable requirements).

[47] *United States v. Buttorf*, 563 F.Supp. 450, 454 (N.D. Tex. 1983) (Hill, J.) (stating that "the legislative process has already taken these [common law] factors into consideration" in its decision to authorize injunctions by statute), aff'd, 761 F.2d 1056 (5th Cir.1985); *See also United States v. Fisher*, 2004 WL 489822, at *8 (N.D. Tex. 2004) ("Section 7402(a) of the Internal Revenue Code authorizes courts to issue injunctions as may be necessary or appropriate for the enforcement of the internal revenue laws. While the Court need not consider the traditional equity factors when issuing a statutory injunction, it is worth noting that those factors are met here.").

[48] 26 U.S.C.A. § 7402(a) (West).

[49] Dkt. No. 1 ¶ 31(B).

[50] Dkt. No. 12-2 ¶ 1 (emphasis added).

reducing Nino's $2,733,059.61 tax delinquency to judgment and issuing a permanent injunction are both appropriate remedies under the circumstances.

Moreover, the stipulated injunction attached to Plaintiff's motion (and thus relief requested by its motion) prays that "[Defendants] shall deposit FUTA taxes in an appropriate Federal depository bank each quarter in accordance with the federal deposit regulations."[51] However, Plaintiff did not pray for this injunctive relief in its complaint, nor did Plaintiff allege that Defendants have failed to pay FUTA taxes. Thus, this injunctive request will not be granted, nor will the Court retain any reference to FUTA taxes when it incorporates the parties' stipulated judgment and injunction later on in this order. Insofar as any of the remaining details of the stipulated injunction exceed the scope of Plaintiff's complaint, the Court finds them appropriate under §7402(a) (independent of the Court's Rule 55 analysis) to ensure compliance with internal revenue law.

  B.  *Calculating judgment against Nino's*

Now that the Court has determined that it is appropriate to grant Plaintiff's motion for default judgment against Nino's, the next question is whether an evidentiary hearing is appropriate to calculate money damages. Plaintiff seeks a judgment that it is entitled to $2,733,059.61.[52] Plaintiff states in its complaint that a delegate of the Secretary of the Treasury estimated the $2,733,059.61 figure, and Plaintiff provides the specific breakdown of tax delinquencies by quarter spanning from 2005 to 2016.[53] Defendants do not contest this figure, which is capable of mathematical calculation. Thus, judgment in the sum of $2,733,059.61 is appropriate without an evidentiary hearing.

---

[51] Dkt. No. 12-2 ¶ 5(D).
[52] *Id.* p. 3.
[53] Dkt. No. 1 ¶ 26.

C. *Permanent injunction against Padron*

Plaintiff specifically prays for a permanent injunction against Padron.[54] The Court notes that on a practical level, Nino's and Padron's conduct is coextensive because Padron is Nino's sole shareholder and operator. For the same reasons that a § 7402(a) permanent injunction is appropriate against Nino's, it is also appropriate against Padron. As worded, the permanent injunction ensures compliance with internal revenue law. The Court observes that entry of a permanent injunction against Padron cannot be premised upon the procedural mechanism of a Rule 55 default entry and judgment, as no motion for default entry has been filed against Padron, and no entry made.

However, § 7402(a) does not predicate the Court's power to issue injunctions upon invocation of Rule 55, and satisfaction of its procedural requirements. Section 7402(a) appears to be an independent, catchall, source of authority to issue injunctions that would effectuate compliance with the internal revenue laws. A permanent injunction against Padron would do just that, and is thus appropriate. The Court observes that district courts in Texas have entered §7204(a)-based permanent injunctions against individual defendants without reference to Rule 55.[55]

---

[54] *See* Dkt. No. 1 ¶ 31(A); Dkt. No. 11-1; Dkt. No. 12-2.
[55] *See e.g., Harris*, 2007 WL 614207, at *3; *Thompson*, 2013 WL 6997410, at *1); *Zweifel*, 2013 WL 8540911, at *1.

## IV. HOLDING

Plaintiff's motion for default judgement against Nino's[56] is **GRANTED**. Furthermore, the joint motion for judgment and injunction against both Defendants,[57] interpreted by the Court as a settlement agreement between Plaintiff and Padron, is **GRANTED** in the manner described above and set forth in the Final Judgment entered separately.

IT IS SO ORDERED.

DONE at McAllen, Texas, this 12th day of May, 2017.

Micaela Alvarez
United States District Judge

---

[56] Dkt. No. 12.
[57] Dkt. No. 11.